## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOYLE BEARD DANIEL, JR.,** | : |
| | : Civil Action No. 1:CV-04-300 |
| **Plaintiff** | : |
| | : (Judge Kane) |
| v. | : |
| | : |
| **JOSEPH W. CHESNEY,** | : |
| **Superintendent, et al.,** | : |
| | : |
| **Defendants.** | : |

### MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion for summary judgment. (Doc. No. 54.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted.

**I.    Background**

Plaintiff, acting pro se, commenced this action by complaint filed on February 10, 2004. Pursuant to an Order of the Court, Plaintiff filed an amended complaint on March 17, 2004. Defendants answered on May 24, 2004. Upon review of the pleadings and the pending motion for summary judgment, it appears that the following facts are undisputed.[1] Plaintiff is currently incarcerated at the State Correctional Institution at Retreat, Pennsylvania, where he is serving 9 to 18 years for voluntary manslaughter. (Am. Compl. ¶ 1.) Plaintiff asserts that on January 14, 2003, he was transferred from SCI-Albion to SCI-Retreat. Plaintiff alleges that during his prior incarceration at SCI-Albion and SCI-Pittsburgh, he was granted "protective custody" after he believed it was unsafe for him

---

[1] Where there is discrepancy between Plaintiff's and Defendants' version of a particular fact, Plaintiff's version is accepted as true for purposes of this Order.

to remain in the general prison population due to his killing of a "drug dealer/gang member in self-defense on January 6, 2000." (Id.)  The administrators of SCI-Retreat granted Plaintiff's request and housed him in the RHU, at all times noting that his custody in the RHU was voluntary and that Plaintiff could return to the general population if he wished to do so.

Following his transfer to the RHU, Plaintiff alleged that he met with a team of corrections officials at SCI-Retreat on February 19, 2003, and requested "soft cover books on African history, weekly phone calls, TV, radio, regular commissary and if failing that a transfer to a protective custody unit at another prison where these privileges would be granted." (Id. ¶ 3.)  According to the allegations contained in the amended complaint, Plaintiff claims that Defendant Chesney, the Superintendent of SCI-Retreat, advised Plaintiff that he was not entitled to the privileges of inmates housed in the general prison population while he remained housed within the RHU, and his request for these various privileges was denied.  (Id. ¶ 4.)  Plaintiff claims he also met with Defendant Erickson, Deputy Superintendent for Centralized Services, and Defendant Sommers, Deputy Superintendent for Facilities Management.  (Id. ¶ 5)  Although not clearly stated, it appears the purpose of these meetings was also to request the various privileges outlined above.  (Id.)  Notwithstanding Plaintiffs efforts, Defendants advised him that his demands for special privileges would not be met while he remained housed in the RHU.  (Id.)

Plaintiff alleges that as a result of the conditions of his confinement, he has been subjected to cruel and unusual punishment, and "unhealthy psychological and physical conditions while he is housed in the [RHU] as an administrative/protective custody inmate." (Doc. No. 11, at 2.)  In his prayer for relief, Plaintiff has requested an "immediate transfer to a protective custody unit at another prison where he could receive weekly phone calls, TV, radio, regular commissary, health care, programs for parole,

etc." (Id., at 4.) Additionally, Plaintiff seeks compensatory damages from each Defendant in excess of $1 million, and punitive damages against each Defendant in excess of $1 million.

## II.     Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The nonmoving party receives the benefit of all reasonable inferences. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, he must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

**III.     Discussion**

There appears to be no genuine dispute over the facts relevant to this case, and Defendants' motion for summary judgment presents a straightforward legal question: do the conditions and regulations applicable to Plaintiff's self-imposed confinement in the RHU violate the Eighth Amendment's prohibition against cruel and unusual punishment? For the reasons that briefly follow, this question clearly must be answered in the negative.

Plaintiff's claim that the conditions and rules applicable in the RHU violate his rights under the Eighth Amendment appears to be based on nothing more than the fact that prisoners within the RHU do not have access to many of the privileges available to prisoners housed in the general prison population, such as radios, televisions, weekly phone calls, and regular commissary, among other amenities. These alleged deprivations, which are not disputed, do not give rise to an Eighth Amendment claim of cruel and unusual punishment.

In Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit affirmed a district court's grant of summary judgment in favor of defendant prison officials on plaintiff's claim that his fifteen-month confinement in administrative custody violated the Eighth Amendment. The Court first noted that the Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency. Id. at 709 (citing Young v. Quinlan, 960 F.3d 351, 359 (3d Cir. 1992)). The Court then found that in order "[t]o prove a violation of the Eighth Amendment, an inmate must show that he has been deprived of 'the minimal civilized measure of life's necessities'." Id. (quoting Young, 960 F.3d at 359). The Court noted that the plaintiff had not presented any evidence that he had been denied "basic human needs, such as food, clothing, shelter, sanitation,

medical care and personal safety." Id.  Instead, the only evidence plaintiff presented regarding the conditions of his confinement concerned the state correctional guidelines and regulations pertaining to prisoners held in administrative custody. Id.[2]  The Third Circuit dismissed plaintiff's Eighth Amendment claim, holding that "[the conditions of confinement in administrative custody] clearly do not involve a deprivation of any basic human need." Id.

As in Griffin, Plaintiff has failed to articulate a valid Eighth Amendment challenge to the conditions of his voluntary confinement within the RHU.  Although Plaintiff's voluntary incarceration within the RHU causes him to be deprived of various privileges or amenities available to prisoners housed in the general population, the regulations of the RHU that Plaintiff identifies do not deprive prisoners of any basic human needs, and therefore the conditions of Plaintiff's confinement to not violate his right under the Eighth Amendment to be free from cruel and unusual punishment.[3]  Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

---

[2]  Many of the conditions of administrative custody at issue in Griffin are similar or identical to those applicable to Plaintiff and other prisoners housed in the RHU. Compare Griffin, 112 F.3d at 706-707 (listing, inter alia, restrictions on tobacco, prohibitions on radios, televisions, telephone calls, personal property and commissary, and limitations of non-legal visitation) with Doc. No. 59, Ex. D., Department of Corrections Administrative Custody Procedures, Policy No. DC-ADM 802 (prohibiting, inter alia, tobacco products, radios, and televisions; restricting personal property, commissary, and written materials; and limiting visitation).

[3]  In reaching this conclusion, the Court is not attempting to delineate the contours of the Eighth Amendment, nor the showing required to support a claim of cruel and unusual punishment. However, it is sufficient to note that Griffin clearly instructs that in order to be cognizable, an Eighth Amendment claim must articulate a deprivation of a basic human need.  In this case, Plaintiff has alleged a right to have a television, a radio, regular commissary, and access to various programs that may assist him in obtaining parole, all of which he contends are available to prisoners housed in the general population.  Such alleged deprivations simply do not rise to the extraordinary level necessary to support an Eighth Amendment claim.

Moreover, the Court finds no legal merit to Plaintiff's tacit claim that he has a constitutional right to be placed voluntarily into administrative custody, while at the same time enjoy special privileges unavailable to any other prisoner similarly situated. Defendants, as the three most senior prison administrators at SCI-Retreat, have determined that it continues to be safe for Plaintiff to enter the general prison population. Plaintiff has been housed in the RHU pursuant to his own request, which appears to be based on his subjective fear for his personal safety, a fear Defendants believe is unfounded.[4] Thus, it was Plaintiff who sought to avail himself of the protections available in the RHU, and Defendants honored his request for administrative custody. Once housed within the RHU, Plaintiff became subject to all of the rules and restrictions that pertain to prisoners housed within that administrative unit. There is simply no basis upon which the Court could find that Plaintiff's voluntary placement of himself in the RHU, with substantially fewer privileges from those available to prisoners in the general population, presents a constitutional violation. For all of the foregoing reasons, Defendants motion for summary judgment must be granted.

---

[4]  The Court's finding that Plaintiff has failed to articulate a constitutional violation would be unchanged even if Plaintiff had been housed in the RHU on the basis of Defendants' own determination that such housing was appropriate. "[I]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002) (citation omitted). Such expertise and discretion also compels the Court to reject Plaintiff's request that the Court order his transfer to another institution operated by the Department of Corrections; determination of the appropriate prison in which to house Plaintiff rests with prison administrators.

**IV.     Order**

And now, this 19th  day of October 2005, for the reasons contained in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Summary Judgment (Doc. No. 54) is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close the file.

                     S/ Yvette Kane  
                     Yvette Kane  
                     United States District Judge